UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

GINA DEVRIES,

               Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.

Case No.18-cv-02824-VKD

**ORDER RE CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 21, 24

Plaintiff Gina DeVries appeals a final decision by defendant Commissioner of Social

Security ("Commissioner")[1] denying her application for disability insurance benefits and

supplemental security income under Titles II and XVI of the Social Security Act (Act). 42 U.S.C.

§§ 423, 1381. The parties filed cross-motions for summary judgment. Dkt. Nos. 21, 24. Pursuant

to the Court's order (Dkt. No. 15), each side also submitted statements of the administrative

record. Dkt. Nos. 20, 25.[2] The matter was submitted without oral argument. Upon consideration

of the moving and responding papers, the relevant evidence of record, and for the reasons set forth

below, Ms. DeVries's motion for summary judgment is granted, the Commissioner's cross-motion

for summary judgment is denied, and this matter is remanded for further proceedings consistent

with this order.[3]

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Andrew M. Saul is substituted in place of defendant Nancy A. Berryhill.

[2] Ms. DeVries did not submit a reply to the Commissioner's statement of the administrative record.

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

# I.    STANDARD FOR DETERMINING DISABILITY

A claimant is considered disabled under the Act if she meets two requirements.  First, a claimant must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the impairment must be so severe that a claimant is unable to do previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," considering the claimant's age, education, and work experience.  *Id*. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, an ALJ follows a five-step sequential analysis:

At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If so, the claimant is not disabled.  If not, the analysis proceeds to step two.

At step two, the ALJ assesses the medical severity of the claimant's impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  *Id*. §§ 404.1520(c), 416.920(c).  If the claimant has a severe medically determinable physical or mental impairment, or a combination of impairments, that is expected to last at least 12 continuous months, 20 C.F.R. §§ 404.1520(d), 416.920(d), she is disabled.  *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the evaluation proceeds to step three.

At step three, the ALJ determines whether the claimant's impairments or combination of impairments meets or medically equals the requirements of the Commissioner's Listing of Impairments.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If so, a conclusive presumption of disability applies.  If not, the analysis proceeds to step four.

At step four, the ALJ determines whether the claimant has the residual functional capacity ("RFC") to perform her past work despite her limitations.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still perform past work, then she is not disabled.  If the

claimant cannot perform her past work, then the evaluation proceeds to step five.

At the fifth and final step, the ALJ must determine whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If so, the claimant is not disabled.

The claimant bears the burden of proof at steps one through four. The Commissioner has the burden at step five. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

## II.    BACKGROUND

Ms. DeVries was born in 1983 and was 34 years old at the time the ALJ rendered the decision under consideration here. She obtained master's degrees in Fine Art and English and last worked as a grant writer and development coordinator at a non-profit organization. Her employment ended in March 2014 due to budget cuts. Nonetheless, Ms. DeVries says that for years she had been suffering from debilitating symptoms of fibromyalgia, as well as other physical and mental health conditions. She claims that by the time her employment was terminated, she no longer had the ability to perform responsibilities required for any kind of work.

On November 7, 2014, Ms. DeVries applied for disability insurance benefits and SSI. She claims that she has been unable to work since March 8, 2014 due to fibromyalgia, chronic fatigue/exhaustion, irritable bowel syndrome, diminished auto-immune capacity, major depression, anxiety and post-traumatic stress disorder ("PTSD"). AR[4] 200-214, 242. Ms. DeVries's application was denied initially and upon reconsideration, and she requested a hearing before an ALJ.

ALJ Elizabeth Stevens Bentley held a hearing on March 8, 2017. Ms. DeVries appeared and testified at the hearing, as did vocational expert ("VE") Joel Greenberg. *Id*. at 34-73.

On June 5, 2017, the ALJ issued a decision concluding that Ms. DeVries is not disabled under the Act. *Id*. at 17-29. At step one of the sequential analysis, the ALJ found that Ms. DeVries had not engaged in substantial gainful activity since the alleged onset date of March 8, 2014. *Id*. at 19. At step two, the ALJ found that Ms. DeVries has the following severe

---

[4] "AR" refers to the certified administrative record lodged with the Court. Dkt. No. 18.

impairments: fibromyalgia, depression, anxiety and PTSD. *Id.*; 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ concluded that Ms. DeVries does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1, 20 C.F.R. §§404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. AR 20. The ALJ further found that Ms. DeVries has the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), noting that she can frequently climb ramps, stairs, ladders, ropes or scaffolds; can frequently balance, stoop, kneel, crouch and crawl; but would be limited to simple, routine tasks and occasional contact with the public. *Id.* at 21. At step four, the ALJ found that Ms. DeVries is capable of performing past relevant work as a data-entry clerk. At step five, the ALJ alternatively concluded that there are other jobs that exist in significant numbers in the national economy that Ms. DeVries can also perform, considering her age, education, work experience and RFC. *Id.* at 27-28.

The Appeals Council denied Ms. DeVries' request for review, and the ALJ's decision became the final decision of the Commissioner. *Id.* at 1-3.

Ms. DeVries now seeks judicial review of that decision, arguing that the ALJ erred in five respects. First, she contends that, on the whole, ALJ improperly evaluated the record with respect to her allegations of disabling fibromyalgia symptoms. Second, Ms. DeVries argues that the ALJ erred in giving little weight to the opinions of her treating providers while giving great weight to those of the examining and reviewing consultants. Third, Ms. DeVries argues that the ALJ improperly rejected her testimony about her symptoms without providing clear and convincing reasons supported by substantial evidence. Fourth, Ms. DeVries contends that the ALJ erred in finding that she could perform her past relevant work. Finally, Ms. DeVries argues that the ALJ erred in determining that she could perform other work. The Commissioner contends that the ALJ's decision is correct and free of legal error.

## III. LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal

standards. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *see also Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257*; Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

## IV.    DISCUSSION

### A.    The ALJ's Assessment of Fibromyalgia Allegations

Ms. DeVries argues that the ALJ's RFC determination is unsupported by substantial evidence because the ALJ did not properly evaluate her fibromyalgia. This error, according to Ms. DeVries, is evident in the ALJ's assessment of the medical opinions and of her testimony regarding her functional limitations. She contends that the allegedly faulty RFC, in turn, caused the ALJ to erroneously conclude (at step four of the sequential analysis) that she could perform her past relevant work and to determine (in the alternative at step five), that she could perform other work. In the opening portion of her motion for summary judgment, Ms. DeVries generally contends that the ALJ "summarily dismissed" her fibromyalgia. Dkt. No. 21 at 6.

In *Revels v. Berryhill*, the Ninth Circuit described the unique nature of fibromyalgia, as well as the approach ALJs should take in evaluating fibromyalgia claims:

> Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke*, 379 F.3d at 589. Typical symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue." *Id.* at 590. What is unusual about the disease is that those suffering from it have "muscle strength, sensory functions, and reflexes [that] are normal." *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting) (quoting Muhammad B. Yunus, *Fibromyalgia Syndrome: Blueprint for a Reliable Diagnosis*, Consultant, June 1996, at 1260).

> "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." *Id.* (quoting *Yunus*, *supra*, at 1260). Indeed, "[t]here is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." *Id.* The condition is diagnosed "entirely on the basis of the patients' reports of pain and other symptoms." *Benecke*, 379 F.3d at 590. "[T]here are no laboratory tests to confirm the diagnosis." *Id.*

874 F.3d 648, 656 (9th Cir. 2017). Noting that "[f]or a long time, fibromyalgia was poorly understood within much of the medical community," and that there was "reluctan[ce] to recognize fibromyalgia as an impairment that could render one disabled for Social Security purposes," the Ninth Circuit further explained that "[a] sea-change occurred in 2012," when the Social Security Administration issued Social Security Ruling ("SSR") 12-2P, which "recogniz[es] fibromyalgia as a valid 'basis for a finding of disability.'" *Id.* (quoting SSR 12-2P at *2). As discussed in *Revels*, SSR 12-2P recognizes two methods for diagnosing fibromyalgia: the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia ("1990 Criteria") and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria ("2010 Criteria"). *Id.* at 656-57 (citing SSR 12-2P at *2).

Under the 1990 Criteria:

> [A] person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may fluctuate in intensity and may not always be present); (2) she has tenderness in at least eleven of eighteen specified points on her body; and (3) there is evidence that other disorders are not accounting for the pain.

*Revels*, 874 F.3d at 656-57.

Under the 2010 Criteria:

> [A] person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may fluctuate in intensity and may not always be present); (2) she has experienced repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) there is evidence that other disorders are not accounting for the pain.

*Id.* at 657 (internal quotations and citation omitted). *Revels* further explained:

> Therefore, diagnosis of fibromyalgia does not rely on X-rays or MRIs. Further, SSR 12-2P recognizes that the symptoms of fibromyalgia "wax and wane," and that a person may have bad days and good days.

In light of this, the ruling warns that after a claimant has established a diagnosis of fibromyalgia, an analysis of her RFC should consider a longitudinal record whenever possible.

*Id*. at 656-57 (internal quotations and citations omitted).

In her decision, the ALJ acknowledged SSR 12-2P, as well as both the 1990 Criteria and the 2010 Criteria. AR 22-23. Ms. DeVries reported that she was diagnosed with fibromyalgia around 2011, and the ALJ's decision indicates that she considered Ms. DeVries's medical history of fibromyalgia as documented in the evidence of record. *See id*. The ALJ concluded that, overall, the longitudinal record did not support the reported severity of Ms. DeVries's fibromyalgia or the limitations it imposed, but that she would nonetheless give Ms. DeVries "the maximum benefit of the doubt" with respect to fibromyalgia as a medically determinable impairment. AR 23.

Having reviewed the record, the Court does not find that the ALJ "summarily dismissed" Ms. DeVries's allegations regarding fibromyalgia, as Ms. DeVries claims. Nor is the Court persuaded by the Commissioner's arguments emphasizing the absence of records containing Ms. DeVries's original diagnosis of fibromyalgia. The ALJ's decision indicates that she considered Ms. DeVries's longitudinal records. While the ALJ appears to have questioned whether Ms. DeVries satisfied all the diagnostic criteria set out in SSR 12-2P, she concluded that fibromyalgia is one of Ms. DeVries's medically determinable impairments and proceeded accordingly with her analysis. To the extent the parties' remaining arguments inform the more specific issues raised by Ms. DeVries, the Court addresses them below.

**B.      The ALJ's Evaluation of Medical Opinions**

As discussed above, the ALJ determined that Ms. DeVries has the RFC to perform light work, noting that she can frequently climb ramps, stairs, ladders, ropes or scaffolds; can frequently balance, stoop, kneel, crouch and crawl; but would be limited to simple, routine tasks and occasional contact with the public. AR 21. In reaching that conclusion, the ALJ gave "little weight" to the opinions of Ryan Gorton, M.D. and Psyche Philips, NP, who both treated Ms. DeVries at the Lyon Martin Health Services clinic and opined that Ms. DeVries has marked limitations in her ability to interact with others, as well as in her ability to concentrate, persist and

1    maintain pace, and that these limitations would prevent her from meeting the demands of a normal

2    full-time work schedule.  *Id*. at 589-590.  Instead, the ALJ gave "great weight" to the opinions of

3    consultative examiner Robert Tang, M.D., who conducted a physical examination of Ms. DeVries;

4    G. Lee, M.D. and H. Samplay, M.D., the state agency medical consultants who reviewed Ms.

5    DeVries's records; Les Kalman, M.D., a psychiatric consultative examiner, who conducted a

6    psychiatric evaluation of Ms. DeVries; and V. Meenakshi, M.D. and R. Ferrell, M.D., the state

7    agency psychiatric consultants who reviewed Ms. DeVries's records.  The ALJ concluded that the

8    consultative examining and reviewing physicians rendered opinions that were generally consistent

9    with the ability to perform light work and simple, routine tasks.  *Id*. at 25-26.

10                    **1.      Ryan Gorton, M.D. and Psyche Philips, NP**

11           A letter co-signed by Dr. Gorton and Ms. Philips states that Ms. DeVries has been a patient

12   at their clinic since 2004.  They note that she has received treatment from Dr. Gorton, and

13   currently receives treatment from Ms. Philips for her physical health.  The letter goes on to state

14   that Ms. DeVries also began mental health treatment services at the clinic in November 2014 for

15   anxiety and depression.  *Id*. at 589.

16           Dr. Gorton and Ms. Philips state that Ms. DeVries's fibromyalgia "results in muscle pain

17   and joint pain and stiffness throughout her body . . . . primarily impact[ing] her neck, shoulders,

18   back, arms and sometimes her hips."  *Id*.  They further note that Ms. DeVries "often uses a cane,

19   as the chronic pain in her upper body causes balancing issues" and that she "frequently has

20   difficulty getting out of her bed and leaving her house."  *Id*.  Additionally, Dr. Gorton and Ms.

21   Philips state that Ms. DeVries has major depression and anxiety "closely related to her

22   fibromyalgia and chronic pain," as well as PTSD stemming from a history of traumatic events

23   from her childhood and adulthood.  *Id*.

24           They go on to state that due to anxiety and PTSD, Ms. DeVries "has marked limitations in

25   her interactions with others," "difficulty dealing with her family," and "is also irritable

26   occasionally . . .."  Additionally, Dr. Gorton and Ms. Philips note that during periods of

27   depression, Ms. DeVries "experiences marked limitations in her ability to concentrate, persist, or

28   maintain pace" and that her fibromyalgia, pain and anxiety leave her isolated, exacerbating her

                                                         8

depression and anxiety. *Id*. at 590.

Dr. Gorton and Ms. Philips opine that Ms. DeVries's symptoms likely predate her start date of treatment at their clinic and will continue for at least another 12 months. They conclude that Ms. DeVries's symptoms would cause her to miss work unexpectedly at least three days per month; require frequent breaks and rest throughout the day; and prevent Ms. DeVries from tolerating more than 10 hours of work per week, without triggering a severe mental health decompensation. *Id*.

### 2. Robert Tang, M.D.

Dr. Tang conducted a physical examination of Ms. DeVries on December 29, 2014. He noted that she was fully able to care for her personal needs, and could episodically complete household and yard chores. *Id*. at 412. He observed that she had a cane that she uses for assistance outside the home, but remarked that Ms. DeVries was able to walk into the exam room, sit comfortably, and get on and off of the exam table without difficulty. *Id*. at 413. Dr. Tang noted that Ms. DeVries was interested in receiving advanced physical therapy, including aquatherapy; and, he believed that after such therapy, Ms. DeVries would not need a cane. *Id*. at 412, 414.

His examination revealed normal gait; normal tandem toe-heel walk; a negative Romberg test; negative straight-leg raising (seated and supine positions); and a "5/5" in motor strength, muscle bulk and tone in all four extremities and grips. *Id*. at 414-15. Dr. Tang observed that "[i]nitially right deltoid upper arm and ankles show guarding and slight tenderness, but later on during the exam these symptoms were not present." *Id*. at 415. Dr. Tang noted Ms. DeVries's "[l]ocal outpatient clinic history of fibromyalgia" and other impairments, but stated that "currently the claimant is mostly asymptomatic with regard to all her joints" and claimed "diminished immunity." *Id*.

With respect to Ms. DeVries's functional abilities, Dr. Tang remarked, "There is minimal decrease in physical function pending advanced physical therapy and mental health determinations." *Id*. He opined that Ms. DeVries has no limitations in standing or sitting; can lift and carry up to 20 pounds occasionally and 10 pounds frequently; can frequently climb ladders,

scaffolds and ropes; has no limitations with respect to steps or stairs or with stooping, crouching, or crawling; and has no limitations in manipulative activities. *Id*. at 416. Dr. Tang further opined that Ms. DeVries should not work at heights, but otherwise has no environmental limitations. He also noted use of a cane "as needed as described above." *Id*.

### 3. G. Lee, M.D. and H. Samplay, M.D.

Drs. Lee and Samplay are the state agency physicians who reviewed Ms. DeVries's records. They concluded that she can lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand/walk for six hours; sit for six hours; and frequently perform postural activities. They noted that Ms. DeVries has no manipulative, visual, communicative, or environmental limitations, and no limitations in her abilities to push and pull, except as noted with respect to her abilities to lift and carry. *Id*. at 84, 112.

### 4. Les Kalman, M.D.

Dr. Kalman is a consultative examining psychiatrist who conducted a psychological evaluation of Ms. DeVries on December 27, 2014. His source of information was Ms. DeVries, whom he noted is "a good historian." *Id*. at 402. Dr. Kalman observed that she was cooperative, with an anxious and depressed mood and restricted affect, and vegetative signs including insomnia related to worry. *Id*. at 403-04. He noted that she was alert and oriented to person, place, date and situation; is of above-average intelligence; has good insight into her mental illness and fair judgment; and has logical and goal-directed thought processes. *Id*. Dr. Kalman noted that Ms. DeVries does her own shopping, cooking and housekeeping, can manage her own transportation, is able to care for her own personal hygiene, and pays her own bills. *Id*. at 404. He further noted that although Ms. DeVries is estranged from her family, she does have friends. *Id*.

Based on his examination, Dr. Kalman stated that Ms. DeVries presents with childhood and early adulthood trauma with abuse and sexual assault, and with depression that has been ongoing for several years, compounded by medical issues. He diagnosed PTSD, generalized anxiety disorder and persistent depressive disorder. *Id*. at 405. He opined that Ms. DeVries is able to interact with supervisors and co-workers; deal with the public; understand, remember and carry out detailed, but uncomplicated job instructions; and withstand the stress and pressure

associated with daily work activities. However, he noted that she has decreased ability to maintain memory. *Id*.

### 5. V. Meenakshi, M.D. and R. Ferrell, M.D.

Drs. Meenakshi and Ferrell are the state agency consultants who reviewed Ms. DeVries's records. They found that she has no restrictions on her activities of daily living and no repeated episodes of decompensation of extended duration. They noted some moderate limitations in maintaining social functioning (i.e., the ability to interact with the general public, and the ability to accept instructions and respond appropriately to criticism from supervisors), as well as in maintaining concentration, persistence or pace (i.e., the ability to carry out detailed instructions; the ability to maintain concentration and attention for extended periods; and the ability to work in coordination with or in proximity to others without being distracted by them). *Id*. at 82, 85, 112.

### 6. The ALJ's Assessment

As discussed above, in finding that Ms. DeVries has the RFC to perform modified light work, the ALJ gave "little weight" to the opinion of Dr. Gorton and Ms. Philips and gave "great weight" to the consultative examining and reviewing physicians. Ms. DeVries argues that the ALJ failed to provide sufficient reasons, supported by substantial evidence, for discounting Dr. Gorton's and Ms. Philip's opinion.

"Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id*.

A treating physician's opinion is entitled to "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[5]

---

[5] Although the Commissioner's rules and regulations regarding the evaluation of medical evidence were revised in 2017, there appears to be no dispute that those revisions do not apply to Ms.

"However, '[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" *Bray v. Comm'r of Social Security Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).

When an ALJ gives a treating physician's opinion less than controlling weight, the ALJ must do two things. First, the ALJ must consider several factors, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *see also* 20 C.F.R. §§ 404.1527(c) 416.927(c). Consideration must also be given to other factors, whether raised by the claimant or by others, or if known to the ALJ, including the amount of relevant evidence supporting the opinion and the quality of the explanation provided; the degree of understanding a physician has of the Commissioner's disability programs and their evidentiary requirements; and the degree of his or her familiarity with other information in the case record. 20 C.F.R. §§ 404.1527(c), 416.927(c)(6). The failure to consider these factors, by itself, constitutes reversible error. *Trevizo*, 871 F.3d at 676.

Second, the ALJ must provide reasons for rejecting or discounting the treating physician's opinion. The legal standard that applies to the ALJ's proffered reasons depends on whether or not the treating physician's opinion is contradicted by another physician. When a treating physician's opinion is not contradicted by another physician, the ALJ must provide "clear and convincing" reasons for rejecting or discounting the opinion, supported by substantial evidence. *Trevizo*, 871 F.3d at 675. When a treating physician's opinion is contradicted by another physician, an ALJ must provide "specific and legitimate reasons" for rejecting or discounting the treating physician's opinion, supported by substantial evidence. *Id.* "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.

DeVries's claim for benefits, which was filed before those revisions went into effect.

12

1989) (quotations and citation omitted).

Dr. Gorton's opinions about the disabling effects of Ms. DeVries's impairments are contradicted by those of the examining and reviewing consultants, who found that, for the most part, Ms. DeVries is capable of performing light work. Thus, the ALJ was required to provide "specific and legitimate" reasons for discounting Dr. Gorton's opinions, supported by substantial evidence. *Trevizo*, 871 F.3d at 675.

As for Ms. Philips, "[a]n ALJ may discount the opinion of an 'other source,' such as a nurse practitioner, if she provides 'reasons germane to each witness for doing so.'" *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)). "The same factors used to evaluate the opinions of medical providers who are acceptable medical sources are used to evaluate the opinions of those who are not." *Revels*, 874 F.3d at 655; *see also* 20 C.F.R. §§ 404.1527(f), 416.927(f).

The ALJ failed, in the first instance, to address all the factors she was required to consider under 20 C.F.R. § 404.1527(c) and § 416.927(c). 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider *all* of the following factors in deciding the weight we give to any medical opinion.") (emphasis added); 20 C.F.R. § 416.927(c) (same). Although the ALJ's decision indicates that she considered some of the required factors, it is not clear that she considered all of them, or if she did, how and to what extent those factors led to her decision to give Dr. Gorton's and Ms. Philips's opinions little weight. The Commissioner argues that Ms. DeVries primarily saw Ms. Philips for treatment and that Dr. Gorton's treatment relationship therefore was very limited. This was not a reason cited by the ALJ and cannot properly be considered here. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (stating that the court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

The ALJ gave little weight to Dr. Gorton's and Ms. Philips's opinions for the same three reasons. First, the ALJ stated that their opinions appeared to be "based primarily on the claimant's subjective reporting." AR 26. Second, the ALJ found that their opinions were inconsistent with "largely normal objective observations on mental status evaluation." *Id.* Third, the ALJ found

13

that the opinions were also inconsistent with Ms. DeVries's "relatively intact daily activities, including the ability to help care for her dying grandmother, provide very lengthy and detailed responses to paperwork in support of her disability application, and respond appropriately at various doctor's appointments and at the hearing." *Id.*

Taking the ALJ's third reason first, for the reasons discussed below, the Court concludes that the ALJ did not properly discount Ms. DeVries's testimony based on her reported activities. In sum, the ALJ failed to properly account for Ms. DeVries's testimony indicating that her engagement in such activities is limited and carried out with difficulty. Accordingly, an alleged inconsistency with Ms. DeVries's reported activities is not a specific and legitimate reason for discounting Dr. Gorton's opinion and is not a germane one for discounting that of Ms. Philips. While the Commissioner correctly observes that the inclusion of the ALJ's personal observations of Ms. DeVries at the administrative hearing is not improper, *see Morgan*, 169 F.3d at 600, that personal observation alone is not substantial evidence, *Sellard v. Shalala*, 37 F.3d 1506 (9th Cir. 1994).

With respect to the ALJ's reasoning that Dr. Gorton and Ms. Philips appeared to base their opinions primarily on Ms. DeVries's subjective reports, Ms. DeVries argues that the ALJ cannot properly discount their opinions on that ground in view of her fibromyalgia. She says that Dr. Gorton's and Ms. Philips's opinions are based on their own personal observations of her and are also consistent with Ms. DeVries's reports of muscle and joint pain and stiffness throughout the body, including neck, shoulder, back, arm and hips. *See, e.g.,* AR 355-356, 365, 370-371, 377, 380-381, 383-384, 388, 394-395, 427, 450-451 537, 549, 589. The Commissioner contends that an ALJ is not required to accept all of a claimant's subjective symptom allegations, even in fibromyalgia cases, pointing out that in evaluating whether a claimant has a medically determinable impairment of fibromyalgia, SSR 12-2P requires "appropriate medical evidence," including documentation that the physician who diagnosed fibromyalgia "reviewed the person's medical history and conducted a physical exam." SSR 12-2P, 2012 WL 3104869, at *2. Here, the Commissioner says that Ms. DeVries's providers appear to have accepted her reported diagnosis of fibromyalgia without performing any independent evaluation of her condition. As such, the

14

United States District Court
Northern District of California

Commissioner says that there is no "appropriate medical evidence" supporting Ms. DeVries's initial fibromyalgia diagnosis and the ALJ was entitled to discount Dr. Gorton's and Ms. Philips's opinions on the ground that they relied on Ms. DeVries's subjective reports. Even so, as discussed above, the ALJ gave Ms. DeVries the "maximum benefit of the doubt regarding medically determinable fibromyalgia, given a long history of fibromyalgia mentioned in the record and some note of possible fibromyalgia manifestations, such as tenderness, fatigue, depression, anxiety, memory problems, and abdominal symptoms." AR 23. Moreover, fibromyalgia is diagnosed "entirely on the basis of patients' reports of pain and other symptoms." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004); *see also Revels*, 874 F.3d at 656 (same). Accordingly, the ALJ could not permissibly discount Dr. Gorton's and Ms. Philips's views on that ground unless the ALJ provided clear and convincing reasons for finding Ms. DeVries's symptom reports and testimony not credible. For the reasons discussed below, the ALJ failed to do so.

With respect to the ALJ's reasoning that Dr. Gorton's and Ms. Philips's opinions are inconsistent with "largely normal objective observations on mental status evaluation," the Commissioner contends that there is substantial evidence that supports the ALJ's conclusion. Here, the Commissioner points out that Ms. Philips and other providers at the same clinic consistently found that Ms. DeVries presented as alert and oriented, in no acute distress, and with normal judgment and insight and normal or full range mood and affect. *See, e.g.,* AR 23, 356, 359, 363, 366, 368, 371, 374, 378, 384, 387, 430-31, 432, 446, 453, 474. Additionally, the Commissioner says that similar findings are also noted in records documenting Ms. DeVries's emergency room visits. *Id*. at 558-559, 567. Further, the Commissioner notes that Dr. Kalman's opinion is consistent with those of the reviewing consultants Drs. Meenakshi and Ferrell, and that the ALJ therefore properly could rely on those opinions as substantial evidence in discrediting those of Dr. Gorton and Ms. Philips. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."). In view of this evidence, the Commissioner contends that the degree of limitation opined by Dr. Gorton and Ms. Philips, who found "marked" limitations in interacting with others

15

but only identified a strained family relationship, is not supported by the record.

As discussed above, however, it is not clear that the ALJ addressed all of the relevant factors, including the relative length and frequency of treatment provided by Dr. Gorton and Ms. Philips. Moreover, insofar as the emergency room records highlighted by the Commissioner relate to visits Ms. DeVries made for reasons not related to mental impairments, the Court finds no particular import in the fact that they do not document the severity of a mental impairment. *See Orn*, 495 F.3d at 634 ("The primary function of medical records is to promote communication and recordkeeping for health care personnel—not to provide evidence for disability determinations."). Additionally, Ms. DeVries notes that notwithstanding that she was observed to be "alert and oriented," with good or normal mood/affect, she notes that records also show ongoing pain and fatigue, and anxiety and depression. *See* AR 383-384 (noting increase in pain and fatigue on 1/6/2014); 380-381 (noting depression, issues with sleep, pain in neck, shoulders, back, arms, and sometimes hips on1/28/2014); 370-371 (noting pain is "not improved but not significantly worse," and ongoing fatigue noted on 5/7/2014); 362 (noting increased anxiety, panic attacks, depression noted on 9/4/2014); 453 (noting increase in anxiety, depression, intermittent diarrhea noted on 3/8/2016). Indeed, while some records do note that Ms. DeVries's depression was "well controlled and improved with Amitriptyline," and that she sometimes experienced improvement (or, at least nor significant worsening) regarding her pain (*see, e.g.,* AR 370, 373, 377, 436, 477), other records indicate that she nonetheless continued to have periods in which she experienced increased anxiety or depression and flares in her fibromyalgia (*see, e.g.,* 355, 362, 365, 421, 427, 460, 462, 466, 469-471, 476).

In view of the record as a whole, the Court concludes that the ALJ did not provide sufficient reasons for discounting the opinions of Dr. Gorton and Ms. Philips. On this issue, Ms. DeVries's motion for summary judgment is granted, and the Commissioner's cross-motion is denied.

### C. The ALJ's Assessment of Ms. DeVries's Symptom Testimony

Ms. DeVries testified at the administrative hearing and also submitted a function report. The ALJ did not make a finding of malingering and concluded that Ms. Devries's medically

determinable impairments could reasonably be expected to produce her symptoms, but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 22. In discounting the severity of Ms. DeVries's alleged symptoms, the ALJ gave several reasons. First, the ALJ noted that objective findings on clinical examination and mental status evaluations were generally within normal limits. Second, the ALJ found that treatment records generally recommended continuing with Ms. DeVries's medications for fibromyalgia, and Ms. DeVries reported that medications helped, thus suggesting effective treatment. She also noted that Ms. DeVries reported improvement in her depression with prescribed medication. Third, the ALJ found that the alleged severity of Ms. DeVries's symptoms was inconsistent with Ms. DeVries's "reasonably intact daily activities" and other statements that the ALJ concluded were not supported by the evidence. AR 22-25.

Ms. DeVries's argues that in discounting the severity of her symptoms, the ALJ failed to provide clear and convincing reasons, supported by substantial evidence.

An ALJ conducts a two-step analysis in assessing subjective testimony. First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996)). If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "'only by offering specific, clear and convincing reasons for doing so.'" *Id*. (*quoting Smolen*, 80 F.3d at 1283-84). That is, the ALJ must "make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Id*. (*quoting Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Trevizo*, 871 F.3d at 678 (quotations and citation omitted).

An ALJ may consider several factors, including (1) ordinary techniques of credibility evaluation; (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment; and (3) the claimant's daily activities. *Tommasetti*, 533 F.3d at 1039. Additionally, an ALJ may also consider the observations of treating and examining physicians and other third parties concerning the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; and functional restrictions caused by the symptoms. *Smolen*, 80 F.3d at 1284. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). "If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'" *Tommasetti*, 533 F.3d at 1039 (*quoting Thomas*, 278 F.3d at 959).

Here, the ALJ made no finding of malingering and therefore was required to provide specific, clear and convincing reasons for discounting Ms. DeVries's statements regarding her symptoms. *Tommasetti*, 533 F.3d at 1039. Additionally, where a claimant's impairments include fibromyalgia, the ALJ's reasons must also be consistent with SSR 12-2P. *Revels*, 874 F.3d at 662.

### 1.    Objective Medical Evidence

The ALJ discounted the severity of Ms. DeVries's alleged symptoms, finding that they were inconsistent with objective findings on clinical examination that were generally within normal limits. For example, the ALJ noted objective findings that Ms. DeVries had "normal gait, normal posture, normal abdominal exam, normal extremities, negative Romberg test, normal tandem and toe-heel walk, full ranges of motion, full motor strength, and intact sensation." AR 23. She further noted that "treating and examining notes since the alleged onset date generally did not mention tender points." *Id*. The ALJ made similar observations regarding Ms. DeVries's psychiatric records, noting that while the evidence documents "some anxious and depressed mood and restricted affect, as well as ability to recall one of three objects at five minutes," objective findings on mental status evaluation "were also generally within normal limits." *Id*. at 23, 354-411, 419-553, 562-587.

The Commissioner contends that Ms. DeVries has not challenged the ALJ's consideration of normal mental status examinations, pointing out that her arguments regarding objective medical evidence relate only to fibromyalgia. Dkt. No. 24 at 10. While the thrust of Ms. DeVries's

arguments seem to focus on her allegations regarding pain and fatigue, as noted above fibromyalgia is a condition that involves both physical and mental symptoms. Accordingly, the Court will address the ALJ's findings regarding physical and mental objective medical evidence here.

Ms. DeVries does not dispute the accuracy of ALJ's description of the record evidence showing normative findings upon examination. While she also concedes that there is a lack of evidence regarding tender points (Dkt. No. 28 at 4), Ms. DeVries correctly observes that under the 2010 Criteria, tender points are not the only means of evaluating fibromyalgia. SSR 12-2P, 2012 WL 3104869 at *3. Instead, the focus of Ms. DeVries's argument is that the ALJ erred by "requiring objective medical evidence" of her fibromyalgia symptoms. Dkt. No. 21 at 13. To the extent that Ms. DeVries contends that an ALJ may *never* consider objective medical evidence in assessing a claimant's allegations, she fails to convince.

As noted above, in evaluating whether a claimant has a medically determinable impairment of fibromyalgia, SSR 12-2P requires "appropriate medical evidence," including evidence that the physician who diagnosed fibromyalgia "reviewed the person's medical history and conducted a physical exam." SSR 12-2P, 2012 WL 3104869, at *2. Once such a medically determinable impairment has been established, SSR 12-2P also appears to contemplate consideration of objective medical evidence, as one of several factors, in assessing a claimant's statements about her symptoms and functional limitations:

> If *objective medical evidence* does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

SSR 12-2P, 2012 WL 3104869 at *5 (emphasis added). *Revels* and other relatively recent decisions by the Ninth Circuit and within this district suggest that it is error for an ALJ to reject a claimant's reports of her functional limitations *solely* because those allegations are inconsistent with objective medical evidence. *See, e.g., Revels*, 874 F.3d at 662 (concluding that the ALJ erred

in failing to analyze the plaintiff's fibromyalgia-related symptoms pursuant to SSR 12-2P in light of fibromyalgia's unique symptoms and diagnostic methods); *Payan v. Colvin*, 672 Fed. App'x 732 (9th Cir. 2016) (noting that "Social Security Ruling 12-2p precludes the ALJ from rejecting alleged functional limitations *solely* on a lack of objective medical evidence.") (emphasis added); *Hamilton-Carneal v. Colvin*, 670 Fed. App'x 613 (9th Cir. 2016) (concluding that the ALJ erred where "the absence of 'objective medical evidence' was a *central factor* in her determination that [the claimant] was not credible.") (emphasis added); *Gerritson v. Saul*, No. 18-cv-03492-JCS, 2019 WL 3779264, at *16-*17 (N.D. Cal. Aug. 12, 2019) (concluding that the ALJ erred by relying on the absence of certain objective medical findings and a mischaracterization of the evidence in discounting the credibility of plaintiff's functional limitations).

Here, the ALJ's decision indicates that she considered the entire longitudinal record. Although she questioned whether the record supported all the requirements of either the 1990 Criteria or the 2010 Criteria, the ALJ gave Ms. DeVries the "maximum benefit of the doubt regarding medically determinable fibromyalgia, given a long history of fibromyalgia mentioned in the record and some note of possible fibromyalgia manifestations, such as tenderness, fatigue, depression, anxiety, memory problems, and abdominal symptoms." AR 22. Unlike in *Revels*, the ALJ did expressly consider SSR 12-2P, and unlike *Hamilton-Carneal*, the objective medical evidence was one of only several reasons given for partially discounting Ms. DeVries's testimony. Accordingly, the Court concludes that the ALJ did not err in considering the objective medical evidence, among other factors, in assessing Ms. DeVries's testimony.

Ms. DeVries nevertheless contends that in considering the objective evidence, the ALJ ignored the notes and opinions of her treating providers, Psyche Philips, NP, therapist Terry LaFrazia, LCSW, and pain management facilitator Marguerite McDermott, LCSW. On the contrary, the ALJ's decision indicates that she considered the entire record. *Id*. at 17-29. Her assessment of Ms. Philips's records and opinion is discussed above. As for therapist LaFrazia, to the extent the ALJ did not mention those records in this portion of her decision, any error is harmless. Elsewhere in her decision, the ALJ correctly noted that Ms. LaFrazia's report does not mention any specific functional limitations. *Id*. at 26, 591-592. Similarly, although the ALJ does

not appear to specifically discuss Ms. McDermott's pain management group report, the Court

finds no specific functional assessment in those records cited by Ms. DeVries. *Id*. at 548, 549,

551-552.

### 2. Efficacy of Treatment[6]

The ALJ also discounted the severity of Ms. DeVries's symptoms based on findings that

treatment of Ms. DeVries's physical and mental health impairments was effective. Here, the ALJ

observed that treatment notes "generally recommended continuing the same medications for

fibromyalgia (naproxen and amitriptyline) and increasing exercise, and the claimant reported that

prescribed medications helped, suggesting effective treatment and that she was capable of a

greater level of activity." *Id*. at 23, 354-401. The ALJ made similar observations regarding Ms.

DeVries's psychiatric records, stating that Ms. DeVries reported improvement in her depression

with medication (AR 370), and that she "frequently followed up with treaters primarily to request

medications." *Id*. at 23-24.

The Commissioner correctly notes that Ms. DeVries did not challenge these findings in her

affirmative motion for summary judgment. In her reply, Ms. DeVries does not dispute that the

ALJ properly could consider the efficacy of treatment in evaluating her testimony. Nor does she

dispute the ALJ's description of the record evidence. Dkt. No. 28 at 11. Nevertheless, while she

acknowledges that "some medications have helped some symptoms as outlined in the record," Ms.

DeVries contends that such evidence does not contradict her testimony about her functional

limitations and therefore is not substantial evidence supporting a clear and convincing reason for

discounting her testimony. Here, Ms. DeVries points to portions of her hearing testimony in

which she acknowledged that Amitriptyline has "really help[ed]" her mental health symptoms, but

noted that she still struggles with depression. AR 51-52. Similarly, in her function report, Ms.

DeVries stated that while medications "help to significantly reduce [her] pain levels," they do not

eliminate her pain, noting that a component of her pain symptoms includes a constant "throbby

---

[6] Although the Commissioner characterizes Ms. DeVries's course of treatment as "conservative,"
the ALJ's decision does not indicate that the ALJ discounted Ms. DeVries's testimony on that
basis, or that the ALJ even characterized Ms. DeVries's treatment as such.

achey pain." AR 273-274. As noted above, while some records do note that Ms. DeVries's depression was "well controlled and improved with Amitriptyline," and that she sometimes experienced improvement (or, at least nor significant worsening) regarding her pain (*see, e.g.,* AR 370, 373, 377, 436, 477), other records indicate that she nonetheless continued to have periods in which she experienced increased anxiety or depression and flares in her fibromyalgia (*see, e.g.,* AR 355, 362, 365, 421, 427, 460, 462, 466, 469, 470, 471, 476).

Accordingly, the Court concludes that, on the whole, the relative efficacy of Ms. DeVries's treatment is not a sufficiently clear and convincing reason to discount her testimony as to her functional limitations.

### 3. Activities of Daily Living

The ALJ also found that the alleged severity of Ms. DeVries's symptoms was inconsistent with her reported activities, concluding that Ms. DeVries has "reasonably intact daily activities" consistent with an RFC for modified light work. AR 24. The ALJ explained:

> Additionally, despite her subjective symptoms and difficulties, such as reported chronic pain and "fibro fog," the claimant was notably able to live alone and care for two pet cats, including feeding and watering them, changing their litter, and taking them to the vet. She was able to maintain independent personal care, prepare large-batch meals to be frozen and reheated, do light household chores, do laundry and take out her trash consistently, use a computer, watch movies or television, and manage her own finances with no changes since the alleged onset date. She was able to manage her own transportation and travel out-of-state to Portland. I note that the claimant was able to draft extensive, very detailed, essay-form documents in support of her disability claim, such as a nine-page response describing her daily functioning in Exhibit 3E, a five-page response describing her pain symptoms, and a 13-page response describing her work history in Exhibit 6E. She was also able to help care for her dying grandmother, a potentially physically and emotionally demanding task.

*Id.* at 24. Ms. DeVries contends that the ALJ significantly overstated her engagement in daily activities and failed to account for her testimony (corroborated by a function report submitted by her friend, Joshua Dunn)[7] that these activities are limited and carried out with difficulty due to

---

[7] Although she correctly notes that Mr. Dunn's report contains statements that support those made in her own function report, Ms. DeVries does not challenge the weight the ALJ gave to Mr. Dunn's statement.

pain and fatigue.

While a claimant's daily activities may be considered in evaluating the claimant's testimony regarding her symptoms, those activities may be grounds for an adverse credibility determination only in limited circumstances: (1) where the activities are incompatible with the severity of the alleged symptoms or (2) where a claimant is able to spend a substantial part of the day engaged in activities that are transferable to a work setting. *Orn*, 495 F.3d at 639. If, despite claims of pain, "a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). At the same time, the "Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits," and "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Id*. And merely because a disability plaintiff carries on certain daily activities "does not in any way detract from her credibility as to her overall disability." *Orn*, 495 F.3d at 639 (citation omitted). Thus, "[t]he ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id*. (quoting *Burch*, 400 F.3d at 681).

The ALJ found that transferability of skills is not an issue. AR 27. While the ALJ listed Ms. DeVries's activities and concluded that they were consistent with her RFC for modified light residual function capacity, the ALJ did not articulate a reason why Ms. DeVries's account of her activities of daily living contradict her account of her symptoms. The record indicates that Ms. DeVries's engagement in the identified activities is quite limited and that she carries them out with difficulty:

- While Ms. DeVries stated that she feeds her cats and changes their water every day, and takes them to the vet when they are sick, she also noted that she changes their litter box only "when [she] can manage it," and that her friends sometimes help her with household chores, including changing the cats' litterbox. AR 243; *see also* AR 255.

- With respect to personal care, Ms. DeVries stated that pain and fatigue leave her bedridden, on average, three days per week. And on days when she is able to get out of bed, she stated that it is not unusual for it to take her six to seven hours to make and eat breakfast, bathe and dress. AR 242-243.

- Ms. DeVries stated that she cooks large meals, which she freezes and re-heats for times when she is unable to cook. However, she also noted that she does so once every three to four weeks, and mainly relies on friends to bring her food, or has food delivered to her home. AR 244, 255.

- Ms. DeVries stated that she is able to take out the trash and do the laundry, with the caveat that she does so "every 2-3 weeks if I can manage it." She also notes that she does these chores in "very small, slow steps" because she "cannot lift more than 5 pounds at a time without hurting [her]self," and as a result, these chores take "a very long time to complete." AR 244-245, 255.

- With respect to her out-of-state travel to Portland, Ms. DeVries notes that the trip was precipitated by her loss of unemployment benefits and her need to sublet her apartment for three months. AR 365.

- Although Ms. DeVries did submit typewritten, essay-form responses in her function reports, her reports state that she managed to finish the applications by limiting herself to two hours of work per day and taking frequent breaks. AR 242. Additionally, Ms. DeVries correctly notes that much of the content of her reports include the same text that has been copied-and-pasted from one report to another. AR 233-252, 269-277.

- Ms. DeVries reported that she shops in stores one every two to three weeks, "as her energy and pain allow," and coordinates with friends who have cars, or uses a cab or car service, because she can no longer carry multiple bags of groceries on foot or public transportation. She further stated that more often (i.e., 1-4 times per month), she relies on a delivery service when she is unable to go to the grocery store. AR 45, 246, 256.

- As for caring for her grandmother, Ms. DeVries testified that she was unable to visit

24

her grandmother multiple times due to her symptoms and that her therapist noted that Ms. DeVries reported an increase in her fibromyalgia symptoms after a weekend of caregiving.  AR 50, 427.

Accordingly, the mere fact that Ms. DeVries sometimes carried on these activities does not constitute substantial evidence to support the ALJ's decision to discount her statements as to the severity of her symptoms—they may simply be indicia of an attempt to lead a normal life within the boundary of those alleged limitations.

### 4.    Other Alleged Inconsistencies

As further grounds for discounting Ms. DeVries's testimony, the ALJ stated that Ms. DeVries made several statements that are inconsistent with her alleged functional limitations.

The Commissioner correctly notes that the only reason challenged by Ms. DeVries in her affirmative motion for summary judgment is the ALJ's remark that Ms. DeVries "testified to pain at a severity of '11' out of 10 during flare-ups, suggesting a tendency to overstate her symptoms and casting some doubt on the reliability of her self-reporting."  AR 25.  The ALJ apparently refers here to testimony in which Ms. DeVries responded to a question asking her to describe what occurs during a flare of her fibromyalgia symptoms.  Ms. DeVries stated that flares affect her tender points, as well as digestive and urogenital systems, and that "basically all of the pain in those specific points is just like turned up to 11."  *Id*. at 42.  Ms. DeVries argues that the ALJ failed to provide any logical connection between this testimony and her conclusion that Ms. DeVries's testimony is not credible.  The Court agrees.  Indeed, although the Commissioner does not concede that point, he also does not provide any substantive argument against it.

Instead, the Commissioner notes that the ALJ offered other reasons which Ms. DeVries did not raise in her motion for summary judgment.  Here, the Commissioner points out that the ALJ stated that Ms. DeVries "admitted she did not drive because she never learned how, rather than due to functional limitations arising from her impairments."  *Id*. at 24-25, 245.  Ms. DeVries notes that, at the hearing, she testified that she never had a driver's license because she never learned how to drive, and not that she was incapable of driving due to her symptoms.  *Id*. 63.  Nevertheless, to the extent that her function report seemed to suggest that she also did not drive

1    due to her symptoms, the ALJ properly noted Ms. DeVries's testimony confirming that the reason

2    she does not drive is because she never learned how.

3         The ALJ also noted that Ms. DeVries "stopped working in March 2014 because she was

4    laid off alongside several other employees, raising the question of whether she could have

5    otherwise continued working (Claimant Testimony)." AR 25. Additionally, the ALJ remarked

6    that Ms. DeVries "received unemployment insurance benefits for a time in 2014 after she stopped

7    working, thereby certifying she was ready and able to work, in at least some capacity, and was

8    looking for work." *Id.* at 25, 218-219. The ALJ's observation that Ms. DeVries was laid off and

9    received unemployment insurance (with a certification of readiness to work) are accurate

10   reflections of the record. And Ms. DeVries does not appear to dispute that an ALJ properly may

11   consider the reason a claimant's employment ended, or a claimant's attempts to continue working,

12   despite a claim of disabling impairments. Nevertheless, cases cited by the parties indicate that

13   whether an ALJ properly discounts a claimant's allegations about her functional abilities for such

14   reasons depends on the context of each case. *See, e.g., Williams v. Colvin*, 699 Fed. App'x 495

15   (9th Cir. 2015) (concluding that in assessing the claimant's testimony, the ALJ permissibly relied

16   on the claimant's own report that he stopped working due to a layoff and not because of any

17   medical problems); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (concluding

18   that the claimant's attempt to work at time when he claimed to be disabled was not a clear and

19   convincing reason for discounting the severity of his symptoms, where the record indicated that

20   the claimant "fac[ed] difficult economic circumstances, tried to work for nine weeks, and because

21   of his impairments, failed."); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (concluding

22   that the ALJ did not err in disregarding the claimant's subjective pain testimony where the

23   claimant told a doctor that he stopped working because he was laid off, and not because he was

24   injured, and also failed to seek medical attention for months, despite complaints of severe pain).

25        Here, although Ms. DeVries indisputably was laid off, she also testified that her "health

26   had been steadily declining for many years" and that before being laid off, she had been working

27   less and less due to her health issues. AR 39. As for her receipt of unemployment insurance (*see*

28   AR 218-219), Ms. DeVries argues that her aspiration to return to work does not contradict her

26

testimony about her symptoms. In view of Ms. DeVries's apparent financial difficulties following her layoff (*see, e.g.* AR 365 noting her need to sublet her apartment), on this record the Court cannot conclude that Ms. DeVries's receipt of unemployment insurance for a short period after her layoff rises to the level of a clear and convincing reason for discounting her testimony.

In sum, the ALJ properly noted the reason Ms. DeVries does not drive. And, while the ALJ did not err in considering the objective evidence in evaluating Ms. DeVries's subjective complaints, the Court also recognizes that fibromyalgia is a condition that is not subject to traditional laboratory analysis. *See Revels*, 874 F.3d at 656. The import of objective evidence in assessing Ms. DeVries's fibromyalgia allegations therefore is limited. Moreover, having concluded that the ALJ otherwise did not provide sufficient reasons for discounting the severity of Ms. DeVries's testimony, the ALJ's explanation based on objective findings and Ms. DeVries's non-driving status do not rise to the level of clear and convincing reasons for discounting her testimony. Accordingly, on this issue, Ms. DeVries's motion for summary judgment is granted, and the Commissioner's cross-motion is denied.

Because the Court concludes that the ALJ did not properly assess the medical opinions or Ms. DeVries's symptom allegations, the ALJ's RFC will need to be reassessed upon remand. Insofar as that may change the evaluation of Ms. DeVries's ability to work, the Court does not address Ms. DeVries's remaining issues that the ALJ's RFC determination caused errors at steps four and five of the sequential analysis.

## V.  DISPOSITION

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). That is because "an ALJ's failure to provide sufficiently specific reasons for rejecting the testimony of a claimant or other witness does not, without more, require the reviewing court to credit the testimony as true." *Treichler*, 775 F.3d at 1106.

The Court may order an immediate award of benefits only if three conditions are met. First, the Court asks "whether the 'ALJ failed to provide legally sufficient reasons for rejecting

United States District Court
Northern District of California

evidence, whether claimant testimony or medical opinion.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).  Next, the Court "determine[s] 'whether there are outstanding issues that must be resolved before a determination of disability can be made . . . . and whether further administrative proceedings would be useful.'" *Id.* (quoting *Treichler*, 775 F.3d at 1101). "When these first two conditions are satisfied, [the Court] then credit[s] the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability." *Id.* (citing *Treichler*, 775 F.3d at 1101).  Even when all three conditions are satisfied and the evidence in question is credited as true, it is within the district court's discretion whether to make a direct award of benefits or to remand for further proceedings when the record as a whole creates serious doubt as to disability.  *Id.* at 1045.  As explained by the Ninth Circuit, "[a]n automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Id.* at 1044.

In the present case, the first condition is met because the Court has found that the ALJ failed to provide legally sufficient reasons for giving little weight to the opinions of Dr. Gorton and Ms. Philips, as well as in discounting the Ms. DeVries's allegations regarding the severity of her symptoms and functional limitations.  However, because the ALJ did not fully or properly evaluate the opinions of Dr. Gorton and Ms. Philips, or properly consider Ms. DeVries's symptom reports, there remain outstanding issues to be resolved, including the ALJ's determinations regarding Ms. DeVries's RFC and her ability to work.  *See, e.g., Salaz v. Colvin*, 650 Fed. App'x 926 (9th Cir. 2016) (vacating the ALJ's RFC determination and remanding for further proceedings where the ALJ failed to give legally sufficient reasons for rejecting aspects of the claimant's treating physicians' opinions and for finding the claimant not fully credible); *Asmar v. Colvin*, No. 16-cv-01079-GPC-MDD, 2017 WL 3405688, at *11 (S.D. Cal., Aug. 9, 2017) (remanding for further proceedings where the ALJ did not properly assess the treating physicians' opinions and, thus, issues concerning the plaintiff's RFC and ability to work remained in the case); *Murphy v. Colvin*, No. 14-cv-03784-YGR, 2015 WL 6674815, at *13-14 (N.D. Cal., Nov. 2, 2015) (same). Accordingly, the Court will remand this matter for further proceedings.

## VI.   CONCLUSION

Based on the foregoing, Ms. DeVries's motion for summary judgment is granted, the Commissioner's cross-motion for summary judgment is denied, and this matter is remanded for further proceedings consistent with this order.  The  Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated:   September 30, 2019

VIRGINIA K. DEMARCHI
United States Magistrate Judge